UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRUCE MATTHYS, | Case No. 3:20-cv-00034-LRH-CLB |
| Plaintiff, | ORDER |
| v. | |
| BARRICK TURQUOISE RIDGE, INC., a Delaware corporation, | |
| Defendant. | |

Defendant Barrick Turquoise Ridge, Inc. ("Barrick") moves this Court to grant summary judgment in its favor on Plaintiff Bruce Matthys' ("Matthys") second amended complaint. ECF No. 78. Matthys opposed (ECF No. 82) and Barrick replied (ECF No. 86). For the reasons contained within this Order, the Court grants Barrick's motion for summary judgment (ECF No. 78).

## I.     BACKGROUND

From 2011 to May 22, 2018, Matthys was employed by Barrick as a Tech V at its Turquoise Ridge Mine near Golconda, Nevada. ECF No. 78-1; ECF No. 78-21. As a Tech V employee with Barrick, Matthys was trained on the standard operating procedures for a piece of mining equipment called a Spraymec machine in 2015. ECF No. 78-2; ECF No. 78-21. After Matthys failed a pulmonary function test in November or December of 2018, Matthys requested a "reasonable accommodation" due to this alleged disability. ECF No. 28 at 1. In February of 2019, Barrick provided Matthys with a Positive Pressure Respirator ("PPR"). *Id.* Matthys alleges that the PPR continued to breakdown and required repair and new parts that Barrick either refused, failed, or delayed doing. *Id.*

On January 9, 2018, Matthys was involved in an incident while operating the Spraymec, resulting in the partial amputation of his finger and damage to Barrick property. ECF No. 78-4; ECF No. 78-21. After an investigation, Barrick issued a Corrective Action Form on January 25, 2018, placing Matthys on a final written warning. ECF No. 78-4. Barrick found that Matthys committed a safety violation by operating the Spraymec with the remote in the cradle, which placed him in a pinch point and led to his injury along with the damaged property. *Id.*

Following this incident, Barrick welded the cradle in a manner as to limit the Spraymec to operating only when the controller was properly sitting in the cradle due to a mercury switch in the controller. ECF No. 78-5 at 88:1- 89:12; ECF No. 78-7 at 5:15-23. Barrick also provided Matthys with additional training and revised the standard operating procedures for the Spraymec. No. 78-5 at 84:10-24. The revised standard operating procedures required the operator of a Spraymec to "[c]omplete a thorough pre and post inspection of the Spraymec" and prohibited them from "operat[ing] the boom with the remote in the cradle" or "bypass[ing] or disabl[ing] a safety feature." ECF No. 78-7. Bypassing or disabling a safety feature is also listed as a zero-tolerance-rule by Barrick. ECF No. 78-9; ECF No. 78-10.

On May 9, 2019, an argument occurred between Matthys and another Barrick employee, Garcia. ECF No. 78-5 at 239:17-24. Barrick conducted an investigation into the incident, which involved multiple interviews and witness statements, photographs, records of pre-operation inspection reports, and GPS locator data. ECF No. 78-11; ECF No. 78-12; ECF No. 78-21. The investigation resulted in Barrick finding that Matthys positioned the remote for the Spraymec in a manner to bypass the mercury switch. ECF No. 78-6. It also found that Matthys failed to complete a pre-operation inspection as part of his field level risk assessment ("FLRA") during that shift as well as prior shifts. *Id.* After the investigation, Barrick terminated Matthys' employment on May 21, 2019, pursuant to a recommendation for termination for failing to complete an equipment inspection and/or bypassing a safety device. *Id.*

About seven months later, Nevada Gold Mines LLC ("NGM") took over the management of all of the relevant employees at the mine site. ECF No. 78-10. In May of 2019, when Barrick terminated an employee for cause, it had a six-month cooling-off period before the former

employee could come onto the mine site. ECF No. 78-14 at 77:16-20. Matthys is aware of a similar Barrick policy but claims it prohibited any former employee who was fired or terminated from working for a contractor for three months.  ECF No. 78-5 at 269:24-270:14.  Matthys is not sure if the same policy applied for a safety violation, and he is unable to identify who told him about this policy.  *Id.* at 270:9-24. Matthys is unaware of NGM's policy. *Id.* at 271:6-15. Within six months of being terminated by Barrick, Matthys sent a resume to an individual, Bignell, in an attempt to obtain employment with Thyssen Mining, Inc. ("Thyssen"), a manager of a third-party contractor who performed work on Barrick property.  ECF No. 78-15. The contract between Barrick and Thyssen states that Barrick "may choose to reject any of Contractor's personnel and shall be under no obligation to provide reasons for such rejection."  ECF No. 78-16; ECF No. 78-18 at 10:16-23, 11:11-12:9.

Thyssen testified that if it were looking to hire someone, Thyssen would send the resume to Barrick's human resource ("HR") department and simultaneously to Thyssen's HR department to do a background check.  ECF No. 78-18 at 33:10-17,  13:9-19.  Barrick confirmed that the standard practice Thyssen and Barrick followed was to have Thyssen reach out to Barrick's HR department, specifically Ms. McCurry would be sent an email. ECF No. 78-14 at 66:1-18, 69:8-21. That never happened with Matthys. *Id.* Thyssen confirmed that Matthys' resume was never sent to Thyssen's HR department. ECF No. 78-18 at 33:18-20. Thyssen also confirmed that Bignell did not send the resume to Barrick's HR department. *Id.* at 23:6-12. Matthys admits that he never submitted an employment application to Thyssen. ECF No. 78-5 at 273:8-10.

On July 9, 2019, Matthys initially filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), but it was not perfected until October 17, 2019, as Charge # 550-2019-001546. ECF No. 28 at 2. The EEOC issued Matthys a Notice of Suit Rights on October 22, 2019. *Id.* On March 16, 2020, Matthys filed a separate charge, Charge # 34B-2020-00829, with the Nevada Equal Rights Commission ("NERC") alleging retaliation in violation of Nevada law. *Compare* ECF No. 8 at ¶ 17; *and* ECF No. 28 at 2 *with* ECF No. 31 at ¶ 57. On November 15, 2022, the NERC issued Matthys a Notice of Suit Rights for Charge # 34B-2020-00829. ECF No. 82 at 2. On January 9, 2023, Matthys filed a civil action in the Eighth Judicial

District Court in and for Clark County, Nevada Case No. A-23-863708-C, which contains only state law claims. *Id.*

Matthys filed his initial Complaint in this Court on January 16, 2020, and subsequently filed his First Amended Complaint on March 21, 2020, asserting five causes of action: (1) discrimination in violation of the Americans with Disabilities Act (the "ADA"); (2) discrimination in violation of Nevada Revised Statute ("NRS") § 613.330; (3) blacklisting in violation of NRS § 613.210; (4) preventing him from obtaining new employment in violation of NRS § 613.200; and (5) intentional interference with prospective economic advantage ("IIEPA"). ECF Nos. 1 & 8. In response to a motion to dismiss (ECF No. 11) filed by Barrick, the Court issued an Order on December 4, 2020 (ECF No. 28), dismissing Matthys' first, second, and fifth causes of action with leave to amend. The Court also dismissed Matthys' third and fourth causes of action with prejudice. ECF No. 28 at 9. On January 5, 2021, Matthys filed his second amended complaint, asserting four causes of action: (1) discrimination in violation of the ADA (disparate treatment); (2) discrimination in violation of the ADA (failure to accommodate); (3) discrimination in violation of NRS § 613.330; and (4) IIEPA. ECF No. 31. On January 19, 2021, Barrick filed an answer. ECF No. 32. It later filed the pending motion for summary judgment on all of Matthys' claims. ECF No. 78. For the reasons contained within this Order, the Court grants Barrick's motion.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

///

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient" to establish a genuine dispute; "there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252.

## III.   DISCUSSION

### A.   Matthys may not abandon his federal claims.

Before addressing the merits of Barrick's arguments for summary judgment on Matthys' causes of action, the Court must address the preliminary matter of Matthys' assertion that he "will abandon all of his federal claims." In his response to Barrick's motion for summary judgment, Matthys announced that he would "abandon all of his federal claims . . . [and] requested] that those federal claims . . . be dismissed without prejudice." ECF No. 82 at 12. However, under Local Rule IC 2-2(b), "for each type of relief requested or purpose of the document, a separate document must be filed." LR IC 2-2(b). The Local Rules illustrate this rule with the following example: "separate documents must be filed for a response to a motion and a countermotion . . . rather than filing a

response and a countermotion in one document." *Id.* Additionally, under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff may voluntarily dismiss their action without either a court order or a stipulation signed by all parties so long as the plaintiff files "a notice of dismissal before service by the adverse party of an answer or of a motion for summary judgment, which first occurs." FED. R. CIV. P. 41(a)(1). "Once the defendant serves an answer or a motion for summary judgment, however, the plaintiff may no longer voluntarily dismiss under Rule 41(a)(1), but must file a motion for voluntary dismissal under Rule 41(a)(2)." *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) (citing FED. R. CIV. P. 41(a)). "Unlike a Rule 41(a)(1) notice of dismissal, a Rule 41(a)(2) motion requires court approval." *Id.* (internal citation omitted).

Here, because Barrick filed its answer to Matthys' second amended complaint on January 19, 2021, and its motion for summary judgment on December 5, 2022, Matthys must file a motion for voluntary dismissal under Rule 41(a)(2). *See* FED. R. CIV. P. 41(a)(2); *see also* ECF No. 32; ECF No. 78. But pursuant to Local Rule IC 2-2(b), the Court cannot consider Matthys' request for voluntary dismissal included in his response to Barrick's motion unless it were filed in a separate document as a motion.

Even if Matthys had filed his request as a separate motion, the Court would not provide the relief requested by him. "A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001). Legal prejudice from a voluntary dismissal would occur when a defendant would suffer prejudice to some legal claim, argument, or interest, including the loss of a federal forum. *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996). During its determination, a district court may consider whether a party has been dilatory in seeking voluntary dismissal, *see id.*, or whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling, *Maxum Indemnification Ins. Co. v. A-1 All Am. Roofing Co.*, 299 F.App'x 664, 666 (9th Cir. 2008) (unpublished) (internal citation omitted).

Here, the Court notes that Matthys has been dilatory in seeking voluntary dismissal. He commenced his action nearly four years ago in January of 2020. *See* ECF No. 1. Since then,

Matthys diligently participated in the litigation process concerning this action. Yet now, in response to Barrick's motion for summary judgment, Matthys requests that this Court dismiss this action without prejudice and vacate its Order (ECF No. 28) issued nearly three years ago dismissing two of Matthys' causes of action with prejudice. ECF No. 82 at 14. Matthys explains his motive for this request, forum shopping and negating a previous favorable outcome for Barrick, by stating as follows:

> To be clear, [Matthys] desires that this case be refiled in state court. The primary motive for [Matthys] seeking to have this case decided in state court is to pursue the claims for blacklisting and interference under NRS [§] 613.200 and NRS [§] 613.210 that this [C]ourt dismissed in its order at ECF No. 28.

ECF No. 82 at 13; *see also* ECF No. 28 at 7-8 (dismissing two of Matthys' causes of action). In analogous situations, courts have found that dismissal without prejudice would cause defendants to suffer legal prejudice. *See EON Corp. IP Holdings LLC v. Apple Inc.*, No. 14-CV-05511-WHO, 2015 WL 4914984, at *5-6 (N.D. Cal. Aug. 17, 2015) (denying a plaintiff's motion to voluntarily dismiss in order to re-file its case and negate an unfavorable ruling by the district court); *Koerner v. Aetna U.S. Healthcare, Inc.*, 92 F.App'x. 394, 396 (9th Cir. 2003) (affirming a district court's denial of a motion to voluntarily dismiss after the court found that its purpose was to negate an unfavorable prior order and refile the claim in state court); *AF Holdings LLC v. Navasca*, No. C-12-2396-EMC, 2013 WL 1748011, at *4 (N.D. Cal. Apr. 23, 2013) (denying a plaintiff's motion to voluntarily dismiss without prejudice because the defendant would be "deprived, at the very least, of the benefit of rulings favorable to him").

**B.      Barrick is entitled to summary judgment on Matthys' second cause of action for discrimination in violation of the Americans with Disabilities Act.**

Under his second cause of action, Matthys asserts a claim for failure to accommodate in violation of the ADA. Barrick argues that it is entitled to summary judgment on Matthys' failure to accommodate claim, asserting that Matthys failed to exhaust his administrative remedies. ECF No. 78 at 19-20. Barrick is correct. Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v.*

*Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In a discrimination case like this, for a court to have subject matter jurisdiction, the plaintiff must have exhausted his EEOC administrative remedies prior to bringing the claim in federal court. *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). While "failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). Even though "[t]he specific claims made in district court ordinarily must be presented to the EEOC, . . . the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). "In determining whether a plaintiff has exhausted allegations that [he] did not specify in [his] administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id.* In doing so, the court must construe the EEOC charge with the "utmost liberality." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting *Farmer Bros. Co.*, 31 F.3d at 899).

The Court previously dismissed Matthys' failure to accommodate claim for failure to exhaust his administrative remedies in relation to his first administrative charge of discrimination. ECF No. 28 at 6-7. When addressing Barrick's motion to dismiss Matthys' first amended complaint, the Court dismissed Matthys' failure to accommodate claim with leave to amend after finding as follows:

> The Court finds that given this charge it is unreasonable to expect that an investigation of discrimination related to a failure to accommodate would have grown out of this charged disparate treatment discrimination investigation. The EEOC charge articulates that the discrimination occurred on a specific day, May 22, 2019, not that it was ongoing for a period of time as Matthys now alleges in relation to his failure to accommodate claim. It is also indisputable that Matthys did

not specify a claim for failure to accommodate in his charge—he provides that he was issued a positive pressure respirator and never articulates that Barrick failed to provide this reasonable accommodation . . . . Because the Court finds that plaintiff's failure to accommodate claim is not reasonably expected to grow out of the allegations contained within Matthys October 2019 charge, his claim must be dismissed for failure to exhaust his administrative remedies. *See Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (holding that because "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," and "the two types of claims are analyzed differently under the law," "they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation that an employee was terminated because of a disability.").

*Id.*

When Matthys filed his second amended complaint in January of 2021, he re-alleged his failure to accommodate claim. *Id.* at 12-13. Under the re-alleged claim, Matthys informed the Court that he planned to complete the administrative exhaustion process for a new administrative charge he filed, which he asserted—for the first time—alleged failure to accommodate. ECF No. 31 at 9-13, ¶ 57. Nearly two years have expired since Matthys filed his second amended complaint, and he has not provided any evidence of exhausting the administrative process for a failure to accommodate claim in relation to his new administrative charge. Instead, when Barrick moved for summary judgment, rather than provide proof that he exhausted the administrative process for his new administrative charge, Matthys attempts to relitigate his previously unsuccessful arguments that he exhausted the administrative process under the old/first administrative charge. ECF No. 82 at 23-24. The Court did not find these arguments meritorious when it issued its Order in December of 2020. *Compare* ECF No. 16 *with* ECF No. 28. With nothing further from Matthys, Barrick is entitled to summary judgment on Matthys' second cause of action.

### C.   Barrick is entitled to summary judgment on Matthys' first cause of action for discrimination in violation of the Americans with Disabilities Act.

Under his first cause of action, Matthys asserts a claim for termination of employment due to disability in violation of the ADA, i.e., disparate treatment. Barrick argues that it is entitled to summary judgment because Matthys failed to provide sufficient evidence to establish each element of his disparate treatment claim. ECF No. 78 at 8-18. It also argues that, even if Matthys could establish each element of his disparate treatment claim, Barrick provided legitimate,

nondiscriminatory reasons for terminating Matthys, and Matthys failed to produce sufficient evidence from which a jury could conclude that Barrick's stated reason for terminating Matthys was in fact pretext.

To prevail on an ADA claim of disparate treatment, a plaintiff must provide sufficient evidence to establish the following elements: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual . . . and (3) he suffered an adverse employment action because of his disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

> 1. <u>Matthys failed to demonstrate that he suffered an adverse employment action because of his disability.</u>

In relevant part, Barrick argues that it is entitled to summary judgment because Matthys failed to provide sufficient evidence to establish that he suffered an adverse employment action because of his disability. ECF No. 78 at 14-16. In other words, Matthys failed to establish causation. In order to establish causation, a plaintiff must demonstrate that the adverse employment action would not have occurred "but for" the plaintiff's disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (holding "but-for" causation standard applies to ADA discrimination claims).

Here, Matthys failed to demonstrate that he would not have been terminated but for his alleged disability. As Barrick argues, the admissible evidence before the Court does not support "but for" causation between Matthys' alleged disability and his termination from employment. *See* ECF No. 78 at 15-16. Before recommending Matthys be terminated, Barrick conducted an investigation concluding that Matthys' actions "show a pattern of disregard to his safety and following standards and safety rules . . . ." ECF No. 86-7 at 2-3. Matthys' recommendation for termination relied upon the following factual basis:

> On January 9, 2018[,] Mr. Matthys was involved in an incident as a result of not following standard operation standards while operating the Spraymec. During the investigation, it was found that he had not completed a FLRA (Field Level Risk Assessment) as required by standard. Also, Mr. Matthys operated the remote from the cradle placing him in a pinch point[,] resulting in a significant injury to his hand. He was placed on final notice discipline for violating the Spraymec SOP and not completing a thorough FLRA. The Spraymec was subsequently redesigned with a safety switch that precludes operation while the remote is in the cradle. Mr. Matthys was retrained in the proper operation of the Spraymec and expectations were reinforced on the completion of FLRA's prior to commencing work.

10

1
2
3

On May 9, 2019[,] at approximately 7:00 p.m.[,] an argument occurred between Mr. Matthys and another employee. During the investigation, it was found that Mr. Matthys had positioned [the] Spraymec remote to bypass the installed safe[]guard. In addition, he did not complete a FLRA as required prior to operating the Spraymec on this shift as well as in prior shifts.

4

*Id.* at 2.

5
6
7

In his response to Barrick's motion for summary judgment, Matthys argues that he provided sufficient evidence to establish that he was terminated because of his disability under the following theory:

8
9
10
11
12
13

[Matthys] had complained about the lack of maintenance and repair for the P[]PR and [] Hansen his boss got testy about it. Then, another employee of Barrick, named Anthony, told Mr. Matthys that [] Hansen was out to get him fired and that he had instructed [] Garcia to go and find a way to get Mr. Matthys in trouble so Hansen could get him fired. (*Ex. 25 Depo of Matthys at 192:20-193:6*). Hansen himself expressed to Mr. Matthys his dissatisfaction with having to deal with Mr. Matthys' accommodation. (*Ex. 25 Depo of Matthys at 225:7-18*[)]. So Mr. Matthys' disability and need for accommodation is tied to Hansen's animus toward Mr. Matthys that was confirmed by the employee who told Mr. Matthys about the plot for [] Garcia to get Mr. Matthys in trouble.

14

ECF No. 82 at 30 (emphasis added).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

As a preliminary matter, the Court notes that Matthys's alleged disability involved a medical condition that required him to use a PPR during certain work activities, and his disparate treatment claim involved an allegation that he "was fired based on, in whole or in part, discrimination against him due to his disability." ECF No. 82 at 28, 30; ECF No. 31 at 8, ¶ 29. Barrick argues that Matthys "attempts to conflate his disparate treatment claim with his failure to accommodate claim to avoid summary judgment." ECF No. 14. To the degree Matthys' theory of causation relies upon his failure to accommodate claim, which is an analytically district type of claim from his disparate treatment claim, factual allegations that Barrick failed to accommodate Matthys' alleged disability do not support his disparate treatment claim that his termination is the result of "discrimination against him due to his disability." The two types of claims are distinct, *see McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004) (collecting cases from different circuits articulating that a disparate treatment or disparate impact claim is distinct from a reasonable accommodation claim), and Matthys failed to exhaust his administrative remedies as to his failure to accommodate claim.

Regardless, Matthys failed to demonstrate that his termination from employment would not have occurred but for his alleged disability, and his declaration and allegations relying on inadmissible hearsay do not create a genuine issue of material fact precluding summary judgment. *See Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002) (holding "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment"); *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2006) (explaining that uncorroborated and self-serving declarations alone do not create any genuine issues of material fact (internal citation omitted)); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997 (as amended) ("A conclusory self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact" (internal citations omitted)); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991) ("If the moving party satisfies his initial burden, the opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists" (internal citation omitted)).

First, Matthys' uncorroborated deposition testimony that another employee of Barrick named "Anthony" told him that Hansen, another employee of Barrick and Matthys' superior, instructed Garcia to find a way to get Matthys in trouble is inadmissible hearsay and does not create a genuine issue of material fact. *See* Fed. Rules Evid. 801(c); *Dubois*, 453 F.3d at 1180 (9th Cir. 2006). Next, Matthys' theory of causation relied upon the existence of a "plot for [] Garcia to get Mr. Matthys in trouble." ECF No. 82 at 30. However, Matthys also asserted that Garcia targeted him because Matthys was a better worker than him and the Barrick representative who led the investigation that resulted in his termination targeted him because of a controversy related to an insurance fraud dispute. ECF No. 78-5 at 223:4-224:8; 146:11-25, 226:20-227:18. Neither of these reasons for targeting Matthys are related to his alleged disability. In fact, Matthys acknowledges that his theory as to the reason Garcia was targeting him is unrelated to Matthys' physical or mental condition, and Matthys does not have any facts or information to support his assertion that Garcia was targeting him because he failed a spirometry test. ECF No. 78-5 at 223:20-224:18. The Court does not find Matthys' unsupported statement that Garcia was instructed to target him by Hansen

to be credible. Conversely, the Court finds Garcia's deposition testimony that he saw Matthys operate the Spraymec with the controller still in the cradle to be credible. ECF No. 78-10 at 81:9-82:6.

Additionally, the Court is not persuaded by Matthys' attempts to discredit Garcia. Matthys' unsupported claim that Garcia contacted him before Garcia's deposition and told Matthys that he could not tell "the truth" out of fear is inadmissible hearsay and does not create a genuine issue of material fact. ECF No. 82 at 25; Fed. Rules Evid. 801(c); *Dubois*, 453 F.3d at 1180; *Bhan*, 929 F.2d at 1409. And while Matthys takes issue with Garcia's initial struggle to immediately recall specific details from the day of the incident as well as the photographs he took to demonstrate the means by which Matthys bypassed the safety device meant to prevent Matthys from operating the Spraymec with the remote still in the cradle, Garcia's deposition testimony occurred well after the incident, meaning an initial inability to recall exact details is understandable, if not expected. ECF No. 82 at 25-26. And unlike Matthys' deposition testimony, Garcia's testimony is consistent.

Finally, Matthys already admitted that he does not have any facts or information to support his assertion that Hansen was targeting Matthys because he failed a spirometry test. ECF No. 78-5 at 224:20-25. Even if Hansen being "testy" were a basis to conclude that Matthy would not have been terminated but for his alleged disability, Matthys has not provided evidence beyond his conclusory assertions that Hansen did any such thing. He also admitted that the following three temporal facts: (1) the conversation with Hansen where Matthys felt Hansen was being "testy" occurred in May or June of 2018; (2) Hansen referred Matthys to the safety department to handle Matthys' concerns in June of 2018; and (3) after June of 2018, Matthys' concerns with his PPR were dealt with by the safety department rather than Hansen. ECF No. 78-5 at 225:7-226:8. Given that Matthys was terminated in May of 2019, Hansen supposedly being "testy" about a PPR in May or June of 2018 and referring Matthys to the safety department, is not a reasonable basis to conclude that Matthy would not have been terminated in May of 2019 but for his alleged disability. Instead, Matthys admitted that he was given two reasons for his termination: (1) disabling a safety device; and (2) failing to perform an equipment inspection or safety check. ECF No. 78-5 at 265:8-19, 268:21-269:2-9. Hansen corroborated that "[t]here were two independent bases for Matthys'

termination. First, deliberately bypassing the safety procedures of the external controller and continuing to operate the sprayer from the cradle. Second, failing to complete a pre[-]operation checklist prior to operating the sprayer." ECF No. 78-7 at 6:3-6.

In sum, Matthys failed to offer sufficient admissible factual evidence from which a trier of fact could conclude that he would not have been terminated but for his alleged disability. Matthys' conclusory allegations are not supported by admissible evidence and, even when viewing the evidence in the light most favorable to Matthys, there do not exist any genuine issues of material fact. The factual basis for Matthys' termination provided by Barrick is entirely separate from Matthys' allegation that he was terminated as a result of his disability, and the admissible discovery material before the Court clearly corroborates the factual basis provided by Barrick for Matthys' termination. Thus, because Matthys failed to demonstrate that he suffered an adverse employment action because of his alleged disability, Barrick is entitled to judgment as a matter of law. And because there are no genuine issues of material fact, Barrick is entitled to summary judgment on Matthys' disparate treatment claim.[1]

> 2.   Matthys failed to demonstrate that Barrick's legitimate, nondiscriminatory reason for terminating Matthys was in fact pretext.

Even if Matthys could demonstrate each of the necessary elements to establish his disparate treatment claim under the ADA, Barrick would still be entitled to summary judgment. Barrick provided a legitimate, nondiscriminatory reason for terminating Matthys, and Matthys failed to produce sufficient evidence from which a jury could conclude that Barrick's stated reason for terminating Matthys was in fact pretext.

If the plaintiff establishes a prima facie showing of disability discrimination under the ADA, "the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its employment action." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003) (internal citation omitted); *see also Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1175-76 (9th Cir. 1998) (internal citation omitted). Here, Barrick provided a legitimate, nondiscriminatory reason for

---

[1]   Because Matthys failed to provide sufficient evidence to establish that he suffered an adverse employment action because of his alleged disability, which is a necessary element to prevail on his claim, the Court need not address the remaining elements of his disparate treatment claim.

terminating Matthys: "Safety Violation." ECF No. 86-7 at 1. As previously discussed, after Matthys' involvement in a workplace incident, Barrick conducted an investigation, resulting in Matthys' termination. *Id.* The factual basis for Matthys' termination included the following three infractions of Barrick's operating and safety standards: (1) repeated failures to complete a FLRA prior to operating the Spraymec; (2) an incident in January of 2018 where Matthy violated standard operation procedure by operating the Spraymec with the "remote [in] the cradle placing him in a pinch point [and] resulting in significant injury to his hand;" and (3) an incident in May of 2019 where Matthys "positioned the Spreymec remote to bypass the [newly] installed safe[]guard" and participated in the same behavior as his prior incident. *Id.* at 2. After the investigation, the recommendation for termination document noted that Matthys had "progressed through the corrective action system and continues to not meet expectations." *Id.* at 3. It also noted that, when he participated in the incident in May of 2019, Matthys was already on "final notice for the same behavior" from the incident in January of 2018. *Id.* at 2. It concluded that Matthys' actions "show a pattern of disregard to his safety and following standards and safety rules . . . ." *Id.* The factual basis upon which Barrick relied to terminate Matthys is clearly supported by the evidence before the Court and entirely separate from Matthys' alleged disability.

Matthys argues that there is a dispute as to whether he was on final notice when he was terminated. ECF No. 82 at 9-10, ¶ 21. In an attempt to support this argument, Matthys points to his deposition where he testified that the policy and practice of Barrick was for a written notice of discipline to "fall off" of an employee's record after one year. *Id.* (citing ECF No. 82-3 at 169:8-11). Matthys appears to imply that he was not on final notice when the incident in May of 2019 occurred because he was put on final notice for the incident in January of 2018 and it had been over one year. *Id.* However, Matthys' understanding that it was the practice for a "written" notice of discipline to "fall off" after one year is irrelevant. ECF No. 82-3 at 169:7-11 ("They used to say verbal, written, written, final . . . you get a written and after 12 months if you did the same thing again, it would be back to verbal."). Matthys was not given a written notice of discipline for the incident in January of 2018, he was put on "final notice." ECF No. 86-7 at 1 (explaining that Matthys "was placed on final notice" for the incident in January of 2018 and, when the incident in

May of 2019 occurred, "Matthys was on final notice for the same behavior"). As the Rule 30(b)(6) designee for Barrick, Ms. McCurry, testified, Barrick utilized a "progressive discipline policy" with steps, the last of which being final notice followed by termination. ECF No. 82-4 at 133:9-18. And as she explained, the steps could be accelerated or skipped, based on the nature of the incident, the violation, the circumstances, or the need for discipline. *Id.* This is corroborated by the recommendation for termination document that states as follows: "Turquoise Ridge Mine's formal corrective action system is . . . comprised of three steps, *unless actions warrant escalation of levels.*" ECF No. 86-7 at 1 (emphasis added). And as Ms. McCurry testified, Matthys committed a zero-tolerance violation twice, which led to his accelerated termination. *See* ECF No. 82-4 at 132:14-134:9, 136:17-137:2. In sum, Matthys' attempt to create a genuine issue of material fact as to whether Barrick provided a legitimate, non-discriminatory reason for terminating him fails. Thus, Barrick provided a legitimate, non-discriminatory reason for terminating Matthys: "Safety Violation."

If the defendant provides a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate that the defendant's "stated reason . . . was in fact pretext." *Raytheon Co.*, 540 U.S. at 50 (internal citation omitted); *see also Mustafa*, 157 F.3d at 1175-76 (internal citation omitted). Here, Matthys failed to demonstrate that Barrick's stated reason for terminating his employment was pretextual. Matthys argues that the safety violations outlined in the recommendation for termination document were pretext. ECF No. 82 at 30. First, despite the clear evidence provided by Barrick to support the legitimacy of its good faith investigation, Matthys argues that the investigation was a "sham." *Id.* In an attempt to support his argument, Matthys asserts that the investigation "relied on unauthenticated photographs" in which he does not appear. These photographs were taken from Garcia's cellphone camera on the day of the incident in May of 2019. ECF No. 86-4. The photographs do not, and need not feature Matthys because the images depict the Spraymec and the means by which Matthys bypassed the safety device meant to prevent him from operating the machine with the remote still in the cradle. *Id.* Garcia authenticated the photographs. ECF No. 82-10 at 40:2-4, 63:12-64:12, 70:8-14, 71:2-8,

73:15-74:4, 81:5-21. Even if he had not, the photographs are also authenticated by way of being part of Barrick's investigative file. ECF No. 86-4 at 14-15. Matthys' argument fails.

Next, Matthys asserts that he did not commit any safety violations. ECF No. 82 at 30. However, Matthys' assertion is not supported by the evidence before the Court. First, Barrick's investigation established that Matthys failed to complete a FLRA prior to operating the Spraymec on multiple occasions, Barrick provided evidence that corroborates its finding, and Matthys failed to provide any evidence to the contrary beyond his own self-serving deposition. *See* ECF No. 78-6; ECF No. 78-12 (documenting the logs of all inspections performed on the relevant Spraymec as well as all inspections performed by Matthys during the period of time relevant to the incident in May of 2019); *see also Dubois*, 453 F.3d at 1180.

Next, referring to the GPS used during the investigation, Matthys argues that it is not trustworthy. ECF No. 82-31 at 30-31. That GPS data used a locator placed on the Spraymec which "pinged" its location in an area when Matthys was operating it before completing any inspection on several occasions. ECF No. 78-7 at 4:13-5:14; ECF No. 78-11. Matthys argues that GPS does not work underground because satellites cannot penetrate the surface of the earth. ECF No. 82 at 30. Yet, it appears that Matthys must be somewhat aware of the illogical nature of his argument because, previously, when explaining how the equipment location monitoring deployed by Barrick works, Matthys testified that "[i]ts not like you[] . . . you have a satellite. They have little sensors to where you go." ECF No. 82-3 at 199:10-18. As Barrick explained, each piece of equipment has a tracker installed on it, and there are various access points around the mine, meaning the equipment does not change locations on the tracker until it passes particular points. ECF No. 86-5 at 1, ¶¶ 5-6. Barrick routinely relies on this location data for numerous reasons beyond workplace investigations. *Id.* at 1-2, ¶¶ 7-10. Again, Matthys' argument fails.

Additionally, concerning the incident in May of 2019, Matthys' explanation that he merely moved the Spraymec but did not operate it is unpersuasive and does not create a genuine issue of material fact. ECF No. 82 at 10, ¶ 21. As Barrick points out, both federal regulations as well as standard operating procedure do not draw the distinction that Matthys tries to draw between operating the Spraymec and moving it. *See* ECF No. 86 at 11 (citing ECF No. 78-8 and 30 C.F.R.

§ 57.14100(c)). Equally unpersuasive is Matthys' argument that the incident in June of 2018 was "a complete accident because [he] accidentally tripped and fell and involuntarily bumped the control." ECF No. 82 at 10, ¶ 21; *see Dubois*, 453 F.3d at 1180; *Bhan*, 929 F.2d at 1409. As to Matthys' conclusory, unsupported assertion that he was told to move the Spraymec before completing a FLRA by a superior, Rodriguez, on the day of the incident in May of 2019, the Court does not find his assertion credible. Matthys' statement is inconsistent with Rodriquez witness statement as well as Rodriguez' deposition testimony that "before you do - - you move the equipment, you do anything with that equipment, you fill that sheet out." ECF No. 86-45; ECF No. 82-9 at 52:3-19. And as to Matthys' position in response to Barrick's motion for summary judgment that, in May of 2019, he "simply moved [the Spraymec] several feet to be able to complete the inspection," it is contrary to his deposition testimony that he "pulled the Spraymec around the corner," which he admitted was more than necessary to complete any safety or equipment checks. *Compare* ECF No. 82-2 at 4:9 *with* ECF No. 82-3 at 243:10-16; *see Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." (internal quotation marks and citation omitted)). In sum, Matthys' argument that the safety violations outlined in the recommendation for termination document were pretext fails. Thus, Matthys failed to demonstrate that Barrick's legitimate, non-discriminatory reason for terminating his employment was pretextual, and Barrick is entitled to judgment as a matter of law. And because there are no genuine issues of material fact, Barrick is entitled to summary judgment on Matthys' disparate treatment claim.

      **D.**     **Barrick is entitled to summary judgment on Matthys' third cause of action for discrimination in violation of Nevada Revised Statute § 613.330.**

Under his third cause of action, Matthys' asserts a claim for discrimination in violation of NRS § 613.330. A claim for disability discrimination under NRS § 613.330 is evaluated using the same standard as a claim for disability discrimination under the ADA because NRS § 613.330, in relevant part, is a codified state-law amalgam of the federal scheme under the ADA. *See Shufelt v. Just Brakes Corp.*, No. 2:16-cv-01028-GMN-CWH, 2017 WL 379429, at *3, *6-7 (D. Nev. Jan. 25, 2017); *Bullard v. Las Vegas Valley Water Dist.*, 2:15-cv-00948-JAD-VCF, 2018 WL 715358,

at \*4 (D. Nev. Feb. 5, 2018); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) (applying the federal courts' ADA analysis to a discrimination claim brought under Nevada law).

This Court will therefore apply the same standard for Matthys' NRS § 613.330 claim as it did for his claims under the ADA. Accordingly, because Matthys' NRS § 613.330 claim is based upon the same events as his ADA claims, Barrick is entitled to summary judgment on Matthys' NRS § 613.330 claim. To be clear, the allegations set forth under Matthys' NRS § 613.330 claim do not materially differ from the allegations set forth under Matthys' ADA claims, i.e., the allegations are the same for all purposes relevant to this Order. Additionally, Matthys has not provided or pointed to any evidence in the record to treat his ADA claims differently than his NRS § 613.330 claim.

So, Matthys' NRS § 613.330 claim encompasses both a disparate treatment claim and a failure to accommodate claim. Thus, because Matthys failed to establish necessary elements as to his disparate treatment claim under the ADA, Barrick is entitled to summary judgment on Matthys' disparate treatment under NRS § 613.330. And because Matthys failed to exhaust his administrative remedies as to his failure to accommodate claim under the ADA, Barrick is entitled to summary judgment on Matthys' failure to accommodate claim under NRS § 613.330.

### E. Barrick is entitled to summary judgment on Matthys' fourth cause of action for intentional interference with prospective economic advantage.

Under his fourth cause of action, Matthys asserts a claim for IIPEA in violation of Nevada law. Under Nevada law, to prevail on a claim for IIEPA a plaintiff must demonstrate: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of that prospective relationship; (3) an intent to harm the plaintiff by preventing or interfering with the prospective contractual relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987); *see also Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993).

Barrick argues that Matthys failed to offer sufficient admissible factual evidence from which a trier of fact could conclude that a prospective contractual relationship existed between

Matthys and a third party. ECF No. 78 at 22-23. The Court agrees. Matthys alleges that a prospective contractual or economic relationship existed between himself and Thyssen, and he asserts that he presented sufficient testimony and circumstantial evidence to establish that he was on the verge of being hired by Thyssen. ECF No. 82 at 15. However, the tort of IIPEA requires more to survive summary judgment, and Matthys failed to raise a genuine issue of material fact as to the existence of a prospective contractual relationship between Matthys and a third party.

In an attempt to support his allegation that a prospective contractual or economic relationship existed between himself and Thyssen, Matthys relies on his own self-serving declaration and deposition, conversations between himself and Bignell, and a letter to the Mine Safety and Health Administration ("MSHA") from an attorney for NGM. But, even when viewing this information in the light most favorable to Matthys, a trier of fact would be forced to draw unreasonable conclusions in order to find the existence of a prospective contractual relationship between Matthys and Thyssen.

First, Matthys' unsupported, self-serving, inconsistent testimony does not create a genuine issue of material fact. *See* ECF No. 82-2 at 1-3, ¶¶ 4-6; ECF No. 82-3 at 274:22-275:17; *see also Dubois*, 453 F.3d at 1180; *Bhan*, 929 F.2d at 1409; *Nelson*, 571 F.3d at 927. In his declaration, Matthys provides the following statement:

> 4.   Within about the first week after I was terminated by Defendant Barrick Turquoise Ridge, Inc. (herein "Barrick") I was in contact to inquire about a job with [] Bignell at Thyssen Mining, Inc. ("Thyssen") whom I knew was in a position to hire me to work for Thyssen, *or recommend me for hire*, for a job that would be on Barrick's mine site. *I communicated with [] Bignell by telephone and by Facebook messages a number of times in the time period* between May 22, 2019 and mid-October 2019. *I sent [] Bignell at Thyssen my resume* and continued to contact [] Bignell through mid-October 2019. (Id.) *Bignell told me that I had a job* and I would be sent for *pre-hiring* physical exam and drug testing and processed in as an employee at Thyssen as soon as he was given clearance to hire me by Barrick.

> 5.   . . . Bignell never told me that he did not have a job for me or that there were no jobs which I would be qualified to do. On the contrary he told me that he was *going to hire me as soon as Barrick cleared it* . . . . I was fully qualified for the Miner II position that Bignell told me he was going to hire me for. I know [] Bignell well enough and have a good enough relationship with him that if he did not have a job for me he would have just said so and not strung me along. He would have to be a pretty big jerk to keep telling me that he would be hiring me when he had no job for me. He is lying now in his declaration. It is my opinion based upon my experience in working with Defendant and my knowledge of the environment of fear that it creates,

1    that [] Bignell is lying now so as not to be blackballed himself for saying
things that are harmful to Barrick, or Nevada Gold Mines now, in this
2    lawsuit.

3    6.      To be absolutely clear, *Bignell specifically told me in a telephone call that
I was hired*, but then Defendant interfered by instructing Bignell that I could
4    not be on its Turquoise Ridge mine site which meant that Thyssen could not
hire me for the position. The specific opportunity that was interfered with
5    was a job as a "Miner II" underground miner according to Thyssen's
classification system. I was completely qualified and had the requisite
6    training knowledge and experience to perform that job.

7    ECF No. 82-2 at 1-3, ¶¶ 4-6 (emphasis added).

8          The record, including Matthys' own declaration, demonstrates that Matthys "was a job

9    applicant with merely a speculative expectation that a potentially beneficial relationship [would]

10    arise." *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004) (internal quotation

11    marks and citation omitted). But "[t]he tort of [IIPEA] does not . . . protect mere potential

12    relationships—which are at most a hope for an economic relationship and a desire for a future

13    benefit." *Biomedical Research Ltd. v. Thane Int'l, Inc.*, 249 F.App'x. 539, 542 (9th Cir. 2007)

14    (internal quotation marks and citation omitted).

15          The Court assigns little weight to Matthys' self-serving statements because his own

16    declaration is riddled with inconsistencies. First, he states that "Bignell told [him] that [he] had a

17    job" and would send him "pre-hiring" screening requirements to complete "as soon as [Bignell]

18    was given clearance to hire [Matthys]." ECF No. 82-2 at 2, ¶ 4. Matthys reiterates the speculative

19    nature of his hope for a job with Thyssen through Bignell when he states that Bignell "told

20    [Matthys] that he was going to hire [him] as soon as Barrick cleared it." *Id.* at ¶ 5. However, in

21    direct contrast to his prior statements, Matthys declares that Bignell told him that he was hired,

22    and Barrick interfered by not clearing Matthys. *Id.* at 3, ¶ 6. These inconsistent, unsupported

23    statements by Matthys render his testimony unreliable.

24          Moreover, Bignell denied making the alleged statements that Matthys now offers, many of

25    which are inadmissible hearsay. *See* Fed. Rules Evid. 801(c); *see also* ECF No. 78-17 at 2-3, ¶¶ 3-

26    13. Conveniently, Matthys alleges that Bignell told him that he was hired via a telephone call rather

27    than messages, the mode of communication the two had been using. ECF No. 82-2 at 3, ¶ 6. But

28    Bignell testified that he did not recall ever speaking with Matthys on the telephone and only

remembered messaging him. ECF No. 78-17 at 3, ¶ 8.[2] In response, Matthys asserts, without evidence, that Bignell is lying due to fear of being blacklisted by Barrick or NGM because "[h]e would have to be a pretty big jerk to keep telling [Matthys] that he would be hiring me when he had no job for me." ECF No. 82-2 at 2, ¶ 5. But, despite Matthys' conclusory statements, Bignell currently enjoys employment with a corporation unaffiliated with this case and testified that he is "only marginally familiar" with Matthys. ECF No. 82-2 at 2, ¶¶ 3, 5.

While the Court must view the evidence in the light most favorable to Matthys and draw all reasonable inferences in his favor, the Court is not required to blindly accept Matthys' inconsistent, self-serving testimony in the face of credible, contradictory evidence. *See Dubois*, 453 F.3d at 1180; *Nelson*, 571 F.3d at 927. In his declaration, Bignell explained that part of his responsibilities with Thyssen were to collect resumes and "*identify* individuals who could fill roles at Barrick . . . ." ECF No. 78-17 at 2-3, ¶¶ 4-6 (emphasis added). He further explains that Matthys contacted him "looking for a job," to which Bignell "told him the same thing [he] tell[s] anyone looking for a job and that is to send [him] a resume." *Id.* at 3, ¶ 7. He testified that "Matthys was never offered an interview from Thyssen" and he was "unaware of whether Matthys ever filled out a job application . . . ." *Id.* at 3, ¶¶ 11-12.

While Bignell testified that he approached a shift coordinator at Barrick named Jacobs, who he worked with regularly, and mentioned "that Matthys was continuing to pester [Bignell] about getting a job" and "Jacobs informed [him] that Matthys was not allowed on Barrick property," it does not change the fact that Matthys cannot demonstrate the existence of a prospective contractual relationship between Matthys and Thyssen. *See* ECF No. 78-17 at 3, ¶¶ 13-14. Bignell also testified that "[i]f that conversation with Jacobs had never happened, [he was] certain that Matthys still would not have received a job offer from Thyssen because Thyssen did not have any open positions for someone with his skill set during that time." *Id.* at 3, ¶ 15.

---

[2]  Matthys objects to Bignell's entire declaration "on the basis of hearsay and lack of authenticity." ECF. No. 82 at 5, ¶ 10 n.4. However, as Barrick correctly notes, "Matthys fails to explain what statement in the declaration is hearsay, . . . [and] [t]o the extent Matthys is objecting to statements he allegedly made, those are statements by a party opponent and largely documented in the Facebook messages between the two." ECF No. 86 at 23 n.10 (citing ECF No. 78-15). Moreover, "the declaration's authenticity is established by Bignell's signature." *Id.* (citing Fed. Rule Evid. 901(b)).

Additionally, Barrick and Thyssen had an established protocol whereby Thyssen submitted the name of any person it desired to hire to Barrick's HR department for approval. ECF No. 78-18 at 33:10-17, 13:9-19; ECF No. 78-14 at 66:1-18, 69:8-21. Therefore, even if Bignell approached Jacobs as a formal request to hire Matthys, it would be unreasonable to believe that a potential employment relationship would follow. It was not the established protocol for hiring and, as Barrick has established, Jacobs did not have authority to make hiring or access decisions. *See* ECF No. 78-18 at 33:10-17, 13:9-19; ECF No. 78-14 at 66:1-18, 69:8-21; ECF No. 78-14 at 74:24-75:7. While Matthys argues that Jacob's alleged statement to Bignell was authoritative because, in a letter sent to MSHA from NGM, an attorney accounted that Jacobs told Bignell not to hire Matthys because Jacobs got tired of Bignell asking, Matthys ignores the part of the letter that states Jacobs "repeatedly repl[ied] that [Bignell] should make that inquiry of NGM's [HR] department instead of Mr. Jacobs . . . ." ECF No. 82 at 13-16; ECF No. 82-11.

Regardless, the letter does not establish the existence of a prospective contractual relationship between Matthys and Thyssen because it does not change that: (1) Bignell testified that "Matthys was never offered an interview from Thyssen" and he was "unaware of whether Matthys ever filled out a job application;" (2) Bignell also testified that "[i]f that conversation with Jacobs had never happened, [he was] certain that Matthys still would not have received a job offer from Thyssen because Thyssen did not have any open positions for someone with his skill set during that time;" (3) Barrick and Thyssen had an established protocol whereby Thyssen submitted the name of any person it desired to hire to Barrick's HR department for approval; and (4) Jacobs lacked the authority to make hiring or access decisions.

At best, Matthys was a job applicant with a mere speculative expectation that a potential job could arise from reaching out to Bignell, which does not establish the existence of a prospective contractual relationship between Matthys and Thyssen. *See Pardi*, 389 F.3d at 852. A jury presented with the evidence before the Court could only reasonably conclude that Matthys had made it no farther than the initial stages of the job application process. *Id.*; *see also Liberty Lobby*, 477 U.S. at 252. At most, Matthys established that he made an unsuccessful effort to obtain employment with Thyssen through Bignell with a hope for a potential employment relationship.

None of this is protected by the tort of IIPEA. *See Biomedical Research Ltd.*, 249 F.App'x. at 542. Thus, because Matthys failed to demonstrate the existence of a prospective contractual relationship between himself and a third party, Barrick is entitled to judgment as a matter of law. And because there are no genuine issues of material fact, Barrick is entitled to summary judgment on Matthys' IIPEA claim.[3]

**IV.    CONCLUSION**

IT IS THEREFORE ORDERED that Barrick's motion for summary judgment (ECF No. 78) on Matthys' second amended complaint (ECF No. 32) is **GRANTED**.

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment accordingly and close this case.

IT IS SO ORDERED.

DATED this 29th day of September, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[3]    Because Matthys failed to provide sufficient evidence to establish the existence of a prospective contractual relationship between himself and a third party, which is a necessary element to prevail on his claim, the Court need not address the remaining elements of his IIPEA claim.